[*General Term, April,* 1872.]

## MEIER HOFFMAN *v.* S. LEVY ET AL.

If a third party, a stranger, write his name on the back of a promissory note, for the purpose of becoming liable, before it is delivered to the payee, he is regarded, in law, as a maker, and to change this presumption he must prove that he signed upon a different understanding, understood by the payee, which proof may be by parol. The presumption, in Ohio, from the mere note itself, in such a case, wholly unexplained, is that such party signed as a guarantor.

When all the evidence is before the court, the pleadings will not be technically scanned, if amendable; but the court will extract the real case from the whole record, and decide accordingly.

*Long & Kramer*, for plaintiff.

*J. & V. Abraham*, and *Stallo & Kittredge*, for Levy.

YAPLE, J. This action was brought upon a promissory note, in form as follows:

" $2,200. CINCINNATI, *November* 12, 1867.

" One day after date, we promise to pay to the order of M. Hoffman two thousand and two hundred dollars. Value received. Payable at ——.

[$1.10 stamp.] " ROSENBAUM & BROS."

On the back of the note is written " S. Levy." Rosen-baum & Bros. have since become bankrupt. Hoffman brought suit in this court to recover the amount of the note, with interest, against Levy as a joint *maker*.

Levy answered, denying that he was a joint maker of the note, and claiming that he only signed as " *indorser;*" also, that he signed as a mere " *security*," and that after the note came due, Hoffman, for a valuable consideration, without his consent, gave time to Rosenbaum & Bros. on the same; and also that Rosenbaum & Bros. remained solvent a long time after the note became due, and could have paid the same, but are now bankrupts; and that plaintiff, for more than two years after the note became due, wholly failed to demand its payment from Rosenbaum & Bros., and to notify him (Levy) of such non-payment.

The cause was tried at Special Term, to the court, which found that Levy signed the note at the same time it was signed by Rosenbaum & Bros., and before the delivery thereof to Hoffman; that, as a result of the testimony, Levy became liable on the note only as a " *conditional guarantor*," and was entitled to have Hoffman demand payment of the note when it fell due, and to be notified of its non-payment, if he were to be held further liable; and that Rosenbaum & Bros. remained solvent for a long time after the note be-

came due, when they became, and still are, bankrupts. The court did not pass upon the issue as to whether Hoffman had given Rosenbaum & Bros. further time on the note; nor was it necessary to do so, if the finding that Levy was only a conditional guarantor upon the note was correct. Upon this finding the court rendered a judgment for the defendant. A motion for a new trial was made by the plaintiff, which motion was reserved for decision here, all the evidence offered by both parties being certified up.

A preliminary question is made as to whether the court, under the pleadings, could find that Levy was a conditional guarantor, the answer claiming him to have been an indorser or surety only.

As amendments may be made, under our code, before or after verdict, to conform the pleadings to the facts proved (Code, sec. 137), we deem this objection immaterial. As is said in a recent case, *The Steamer Syracuse,* 12 Wal. 167: " The court will extract the real case from the whole record, and decide accordingly."

The question in the case, upon the evidence as controlled by the rules of law, is whether Levy is entitled to all the rights of an ordinary indorser on this note, or whether he was such a conditional guarantor as would give him such rights, or whether he is to be regarded as a joint maker of the note, though surety merely for Rosenbaum & Bros.

We have carefully read all the evidence in the case, and shall state our conclusions as to what it establishes without setting it forth in detail.

Hoffman testifies that, having the money, for which the note was given, to loan, he talked with one of the firm of Rosenbaum & Bros. about loaning it to them; that he wanted security for it; that Levy was named as such surety; that he made inquiries as to his standing through one or two persons, and satisfied himself that he would be sufficient; that he then took the money to Rosenbaums'; that they sent for Levy, who came into their store; that the matter of the loan was talked over, he saying that he would

not want the money for a year or two, unless he should buy a house; that their book-keeper, Marck, said the best way would be to draw the note at one day after date, so that he could demand his money at any time, but that they should have thirty days after demand to pay, which all parties agreed to; and that then Rosenbaum & Bros. signed the note and Levy wrote his name upon the back of it, with the same ink, after which it was handed to him. David Marck, the book-keeper, whose deposition was taken by the defendant and read by the plaintiff, fully sustains these statements of the plaintiff. The defendant, Levy, however, swears that he knew nothing of the understanding between Hoffman and Rosenbaums as to when and how the money was to be called for and paid; that one of the Rosenbaums came to his store and desired him to indorse for them for a few days; that he went to their store where Hoffman then was, saw the note on the table or desk, signed by Rosenbaum and Bros.; that he then signed his name on the back of it, and went back to his store, saying nothing to Hoffman; but, perhaps, bidding him the time of day.

Levi and Meyer Rosenbaum state the facts substantially as the defendant does.

This testimony may be reconciled as consistent with this fact: there was the understanding between Hoffman and the Rosenbaums, that he and their book-keeper, Marck, speak of, but Levy may not have been advised of it. If so, what is the legal effect of the whole transaction? The rule of law, in Ohio, is, that if the name of a third party, a stranger to it, is found written upon the back of a negotiable note, and no other fact is in evidence, such third party is presumed to be a guarantor; that for a sufficient consideration he guaranteed payment of the note. But, if the fact be shown that he wrote his name upon the back of the note *before* its delivery to the payee, for the purpose of becoming liable on it, then the law makes him, in the absence of any special agreement, a joint maker of the note, either as surety for the principal maker or otherwise,

according to the arrangement between him and his co-joint maker. But the parties, notwithstanding such legal presumptions, may make any legal contract as to the character and conditions upon which such party may sign his name on the back of the note, and such contract may be proved by parol, though one of the conditions be a waiver of demand and notice of non-payment; for that may be an essential part of the consideration of the contract. Such special contracts are really collateral to the terms expressed in the note itself. The payee, or holder of such note, may also, at any time, write the very terms of such special contract above the name signed in blank. If he writes something different from the real contract, a court will strike out or disregard what was not authorized. *Bright* v. *Carpenter*, 9 Ohio, 139; *Stage* v. *Olds*, 12 Ohio, 158; *Champion* v. *Griffith*, 13 Ohio, 228; *Leonard* v. *Sweetzer*, 16 Ohio, 1; *Greenough* v. *Smead*, 3 Ohio St. 415; *Seymour* v. *Mickey*, 15 Ohio St. 515.

The court below was clearly right in finding that Levy signed his name on the back of the note *before* it was delivered to Hoffman by Rosenbaums for the money Hoffman loaned them. This made him a surety for them—a joint maker of the note to Hoffman, if there was no other agreement or understanding between the parties; and it became the duty of Levy, if Rosenbaums did not pay the note when due, to pay it himself and seek redress from them. No mere indulgence, granted to them by Hoffman, though they became insolvent during such indulgence, would discharge Levy. It required no notice of nonpayment at any time to be given him to continue his liability. It has been held in Ohio, that where a creditor has a judgment lien upon a debtor's property, which he suffers to be lost, and the debtor becomes insolvent, a surety of the debtor will not thereby be discharged. *Bank of Canton* v. *Reynolds*, 13 Ohio, 84. And this rule is settled by the overwhelming weight of authority.

But the court found, from the evidence, that there was

an agreement between the parties, that Levy should sign as a conditional guarantor only, which would discharge him from liability as he had no notice of the non-payment of the note, when it became due, or within a reasonable time thereafter, and that injury had resulted to him from the insolvency of the principal makers. *Seymour* v. *Seyman*, 10 Ohio St. 283; *Seymour* v. *Mickey*, 15 Ohio St. 515; *Bashford* v. *Shaw*, 4 Ohio St. 263; *Wolfe* v. *Brown*, 5 Ohio St. 304; *Forrest* v. *Stewart*, 14 Ohio St. 246. In the cases reported in 10 and 15 Ohio St., it was clear that Mickey refused to assume the obligations of a maker, but would only agree to assume the liability of an indorser of the note sued on in those cases, and upon that express understanding, wrote his name on the back of the note. This agreement, it was held, changed his character as a party from that of a maker to a mere conditional guarantor—the condition being that he should be treated as a mere indorser; and it was also held that such agreement might be proved by parol.

But we have carefully considered all the evidence in this case, and find that there was no agreement as to the character in which Levy signed this note. We are convinced that it was understood he was assuming just such liability as the act of signing his name on the back of the note, before its delivery to Hoffman, would, in law, impose upon him, no less and no more, and that made him a joint maker of the note and surety for the Rosenbaums.

The use of the particular words, " indorse," " indorser," " secure," or " security," by the parties, we attach no weight to. Most of them understood the English language but imperfectly, and can not be expected to have nicely discriminated in the use of English words, much less to have used such words in their technical legal sense. Levy did not say, " I sign this so that you will have to give me notice if it is not paid, or so you will have to protest the note if it is not paid," or anything equivalent thereto. We know how loosely such terms are used by everybody. Nearly everybody will say, when assuming liability as a

surety by writing his name on the back of a note, "I will *indorse* it," "I will *indorse* for you."

In New York, the liability assumed in such cases is merely an ordinary indorser's liability, and parol evidence can not be received to prove any other species of liability. Hence, the general use of the word "indorse" everywhere, for the same act, done under precisely the same circumstances, though in different States the legal consequences attaching to the act are very different.

In the following States, one not a party thereto who writes his name upon the back of a note before indorsement by the payee, is presumed to be a maker : Massachusetts, Vermont, Maine, New Hampshire, Michigan, Louisiana, Missouri, South Carolina, and Texas. If so signed before delivery and to secure the payee, the party is a maker in Rhode Island, Georgia, Ohio, and Minnesota.

In New York, Mississippi, Pennsylvania, Tennessee, Iowa, Wisconsin, California, and Indiana, such party is *prima facie* an indorser; and in New York the liability can not be changed by parol proof, neither can the presumption of maker in Massachusetts be. In Illinois, Connecticut, and Ohio, he is *prima facie* a guarantor. In Kentucky, the *prima facie* presumption is that the party signed as an indorser, or guarantor, parol proof being admissible to determine which ; but, judging from the note alone, such proof is not admissible to prove that the party signed as maker. The different rules on this subject adopted by different States are always to be kept in mind when authorities are cited or considered, yet everywhere this act is called "indorsing." See Leading Cases on Notes and Bills, Red. & Big. 155, 156, note.

So the real character of all such transactions is to be otherwise ascertained than by nicely criticising words. Nor are there any subsequent admissions of Hoffman to vary the case, if even such admissions could amount to anything, when we have the very transaction proved by five persons. His conversation with Weis previous to the loan,

in which he may have used the word "indorse," was to learn whether Levy would be sufficient security for the debt. Schroeder, with whom he talked afterward, and to whom he used the word "indorsed," or "secured," the witness does not recollect which, told him the note ought to have been protested. It seems he then became doubtful whether he could hold Levy for that reason. This explains his statements in the presence of Wolenhaupt about Levy's being discharged, because he had failed to protest the note.

The evidence makes Levy a joint maker of the note and liable upon it, unless he has been discharged (he being a surety), by Hoffman giving time to the principals for a valuable consideration. It is alleged that he did, and that is an issue in the case. But it has not been passed upon by the court. Had the evidence justified the finding that Levy was only a conditional guarantor, it would have been unnecessary to pass upon this issue; but, viewing the effect of the evidence as we do, after carefully considering its weight, this becomes very material. The court must pass upon all the issues, unless the finding upon one necessarily disposes of the whole case. *Hanly* v. *Levin*, 5 Ohio, 227; *Powell* v. *Harper*, 5 Ohio, 259; *Hewson* v. *Saffin*, 7 Ohio, pt. 2, p. 232; *Martin* v. *Clinton Bank, etc.*, 14 Ohio, 187; *Rohrer* v. *Morning Star*, 18 Ohio, 579.

Upon the whole case, the judgment rendered at Special Term will be set aside, and the plaintiff granted a new trial.